IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| FRANKLIN D. MAPLES, JR., | ) Civil Action No. 3:07-3568-CMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| CITY OF COLUMBIA AND | ) |
| BRADLEY ANDERSON, IN HIS INDIVIDUAL | ) |
| CAPACITY, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, Franklin D. Maples, Jr. ("Maples"), commenced this action in the Court of Common Pleas for Richland County on October 5, 2007. Defendants, the City of Columbia (the "City") and Bradley Anderson ("Anderson") removed this action to this court on October 30, 2007. Maples alleges a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") against the City. He also alleges a claim against Anderson, in his individual capacity, under 42 U.S.C. § 1983 ("1983").[1] On June 16, 2008, Defendants filed a motion for summary judgment. Maples filed a response on July 28, 2008, and Defendants filed a reply on August 5, 2008.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat

a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Maples, a white male, has been employed by the City of Columbia since approximately 1984. He has been an Assistant Fire Marshal since 2002. Maples Aff., Para. 1; Maples Dep. 5-7.

2. Anderson is the Fire Chief for the City. See Anderson Aff., Para. 1.

3. Aubrey Jenkins ("Jenkins") is the Deputy Fire Chief for the City. Jenkins Aff., Para. 1.

4. Charles P. Austin, Sr. ("Austin") is the City Manager. Austin Aff., Para. 1.

5. After the retirement of Fire Marshal John Reich until the appointment of Joseph Floyd as Fire Marshal, Maples served as Acting Fire Marshal for approximately six months. During that time, Maples' performance evaluation reflected that he exceeded expectations. See Plaintiff's Opp. Mem. at 2; Maples Aff., Para. 3.

6. The position of Fire Marshal became vacant again in September 2005, upon the retirement of former Assistant Fire Chief, Joseph Floyd, a white male. See Anderson Dep. 12, 19.

7.  The Columbia Municipal Code provides for the appointment of the Fire Marshal by the City Manager upon recommendation of the Fire Chief. City of Columbia Municipal Code 9-62(b)[Defendants' Ex. N]; Maples Dep. 85.

8.  Maples, George Adams ("Adams"), a white male, and Carmen Floyd ("Floyd"), a woman of unidentified race,[2] were Assistant Fire Marshals at that time. See Anderson Dep. 19.

9.  Anderson states that he failed to find an obvious internal candidate to fill the Fire Marshal position and decided to open the position for application to individuals outside of the City of Columbia Fire Department. Anderson Dep. 17.

10. In the interim, Anderson assigned supervisory duties in the Fire Prevention Division to the three Assistant Fire Marshals. Anderson states that all three (Maples, Floyd, and Adams) did a good job. Anderson Dep. 19, 33.

11. In a January 2007 memorandum, Anderson outlined the process for selecting the Fire Marshal as follows:

   a.  Publication of notice of vacancy and solicitation of applicants.

   b.  Telephone interviews of applicants by members of the Command Staff.

   c.  Development of a written exercise on two topics relevant to fire prevention and leadership.

   d.  Review and scoring of the written exercise by Anderson, Deputy Fire Chief Jenkins, and retired Fire Marshal Greg Faggart (Faggart").[3]

---

[2] Although Floyd's race has not been identified, the parties appear to agree that Floyd is not Caucasian. See Plaintiff's Opp. Mem. at 2; Anderson Dep. 24. Floyd is not related to Joseph Floyd.

[3] Faggart retired from the City of Concord, North Carolina Fire Department, where he held the position of Fire Marshal. He is a friend of Anderson. The two worked together in the Fire Prevention Division of the Charlotte Fire Department. Faggart Aff., Para. 1; Anderson Dep. 82.

    e. Development of written questions and instructions for interviews of applicants.

    f. Selection of an interview panel. The selected members of the panel included: (1) Jenkins (black male); (2) Bart Massey ("Massey")(white male), a retired City of Charlotte Fire Marshal; (3) John Dooley ("Dooley")(white male), Director of Utilities and Engineering for the City of Columbia; (4) Missy Gentry ("Gentry")(white female), Public Works Director for the City of Columbia; (5) Jacques Gilliam ("Gilliam"), Director of Human Resources for the City of Columbia; and (6) Henry Hopkins ("Hopkins")(black male), Eau Claire Community Council Director.

    g. Addition of written exercise and interview scores.

    h. Personal interviews by Anderson.

    i. Written recommendation to the City Manager.

Austin Aff., Ex. A.

12. Maples and Floyd, along with other inside and outside applicants, submitted applications for the position.

13. The written exercise asked applicants to outline steps they would take to provide incentives to install sprinkler systems where they were not required by Code and to describe their plan to improve motivation in the Fire Prevention Division. Faggart Aff., Ex. A.

14. Maples was selected as one of the nine finalists to participate in the evaluation process. The candidates, including Maples, were asked seven questions by the interview panel.

15. Maples scored ninth out of the nine final candidates on the two written questions. Floyd scored fifth on one question and sixth on the other written question. On the oral board interview, Maples scored second and Floyd scored first out of the nine final candidates. When the scores were combined, Floyd scored third and Maples scored eighth out of the nine final candidates. The two applicants scoring higher than Floyd were from Florida. Of the

four finalists ranked below Floyd and above Maples, two were black males and two were white males. Austin Aff., Ex. A; Anderson Aff., Para. 5 and Ex. A.

16. Anderson states that he did not recommend the selection of either Florida candidate as one had a history of changing jobs and the other had experience limited to a small fire department. Austin Aff., Ex. A; Anderson Dep. 24.

17. In a memorandum to City Manager Austin, Anderson recommended Floyd be selected as Fire Marshal. He identified the process, participants in the process, and scores of the finalists for the position. Anderson stated that Floyd:

> was the only candidate who had all of the following attributes: The knowledge required for the position, excellent organizing skills, a zeal for the job demonstrated by a high energy level, a plan for the Fire Prevention Division and a background in supervision. Daily in her current position, she demonstrates good leadership and interpersonal relations and produces both consistent and high quality work.

Austin Aff., Ex. A.

18. Austin states that he accepted Anderson's recommendation, relying on the reasons contained in Anderson's memorandum. He states that neither Floyd's race nor gender were motivating factors in his decision. Austin Aff., Para. 4.

19. At the time Floyd was selected as Fire Marshal, Battalion Chief Richard A. Dunn (white male) was promoted to the position of Assistant Chief for Professional Services and Battalion Chief Cam Gilliam (white male) was appointed to head the Administrative Division. Maples Dep. 46-47.

20. Maples testified that Anderson stated (while announcing Floyd's promotion) he was glad the first female Fire Marshal was appointed on his watch, but her sex was not a factor in the promotion. Maples Dep. 47-48.

21. Following her promotion, Floyd participated in an advanced supervisory course at Midlands Technical College.  See Anderson Dep. 35-37.

22. Maples had the opportunity to grieve the selection of Floyd for the Fire Marshal position, but chose not to do so.  Maples Dep. 38-39.

## DISCUSSION

Maples alleges that Defendants discriminated against him in violation of Title VII and § 1983 by failing to promote him based on his race and/or gender.  Defendants contend that they are entitled to summary judgment because Maples cannot state a prima facie case of discrimination or show pretext in the selection of the Fire Marshal.  Anderson contends that he is entitled to summary judgment based on qualified immunity.

A.     Title VII Claim

Maples alleges that the City discriminated against him based on his race and/or gender because he was not promoted to the position of Fire Marshal.  Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof[4] of a defendant's intent to

---

[4]Maples has not presented any direct evidence of discrimination.  The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor..."  Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 (4th Cir.), cert. denied, 454 U.S. 860 (1981)).  In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested
(continued...)

discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination.

> A plaintiff establishes a prima facie case of discriminatory failure to promote by showing:
>
> (1)    he is a member of a protected group,
>
> (2)    he applied for the position in question,
>
> (3)    he was qualified for the position, and
>
> (4)    he was rejected under circumstances giving rise to an inference of unlawful discrimination.

Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). The burden of establishing a prima facie case is not an onerous one. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Under the familiar burden-shifting framework of the analysis for Title VII actions, once the plaintiff carries the initial burden of proving a prima facie case,[5] the employer bears

---

[4](...continued)
employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).

[5]Title VII prohibits discrimination against all groups, including majority groups (such as Caucasians) which have been historically favored. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 279-280, 296 (1976). Courts are split on whether a non-minority plaintiff is entitled to the same inference of discrimination as a minority plaintiff when he or she proves a prima facie case. The Sixth, Eighth and District of Columbia Circuits have held that a reverse discrimination plaintiff only raises an inference of impermissible racial discrimination when he or she both satisfied the McDonnell Douglas prima facie test and also presents evidence of background circumstances to support the suspicion that the defendant discriminates against whites. See Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67-68 (6th Cir. 1985); see also Donaghy v. Omaha, 933 F.2d 1448, 1458 (8th Cir. 1991), cert. denied, 502 U.S. 1059 (1992); Lanphear v. Prokop, 703 F.2d 1311, 1315 (D.C.Cir. 1983). The Eleventh Circuit has held that a reverse discrimination plaintiff raises an inference of impermissible racial discrimination when he or she satisfied the McDonnell Douglas prima facie test. See Wilson v. Bailey, 934 F.2d 301, 304 (11th Cir. 1991).

There is no Fourth Circuit decision on this issue. In Stock v. Universal Foods Corp., 817 F. Supp. 1300 (D.Md. 1993), aff'd, 16 F.3d 411 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994), the District Court used the traditional McDonnell Douglas analysis. Id. at 1306. The Fourth Circuit upheld the District Court opinion on appeal in an unpublished opinion, but did not decide on the
(continued...)

the burden of articulating a legitimate, non-discriminatory reason for the challenged employment decision. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, a plaintiff must then show that the proffered reasons were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

(1) Prima Facie Case

Maples asserts that he has established a prima facie case of discrimination. Defendants contend that Maples has not established his prima facie case. They, however, do not address why they believe Maples has not done so. See Defendants Opp. Mem. at 10-11. In their reply, Defendants do not specifically address Maples' prima facie case. Thus, at least for purposes of summary judgment, it appears that Defendants do not dispute that Plaintiff has established his prima facie case.

(2) Legitimate, Non-Discriminatory Reason

Defendants have articulated a legitimate, non-discriminatory reason for selecting Floyd, that she received higher scores on the written exercise and oral interview. Austin states that he accepted Anderson's recommendation, relying on the reasons contained in Anderson's memorandum. Austin Aff., Para. 4. (Anderson Memorandum). Anderson, in the memorandum, stated that his recommendation was based on Floyd's scoring in the process; her knowledge, excellent organizing skills, zeal for the job demonstrated by a high energy level, plan for the Fire

---

[5](...continued)
proper standard to be used. See Stock v. Universal Foods Corp., No. 93-1448, 1994 WL 10682 *3, n. 2 (4th Cir. 1994)[Table], cert. denied. 513 U.S. 813 (1994). Thus, for purposes of summary judgment, the undersigned finds that if Plaintiff establishes his prima facie case, he is entitled to this rebuttable presumption.

Prevention Division, and background in supervision; her good leadership and interpersonal relations; and her consistent and high quality work. Austin Aff., Ex. A.

   (3) <u>Pretext</u>

    Maples claims that he has shown pretext because: (1) he was objectively more qualified than Floyd for the Fire Marshal position; (2) the selection process was biased and discriminatory; and (3) he has presented evidence that Anderson consciously considers race and gender when making employment decisions. "A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." <u>Heiko v. Colombo Savings Bank, F.S.B.</u>, 434 F.3d 249, 259 (4th Cir. 2006).

    (a) <u>Qualifications</u>

     Maples claims that he has shown pretext because he was better qualified for the position than Floyd. Specifically, Maples claims that he was better qualified than Floyd because Floyd had no management experience, he (Maples) had management experience and was already successfully doing the job, Floyd was sent to take a management class after her selection for the position, and Anderson commented that he hoped Floyd would grow into the job. Defendants contend that Maples fails to show pretext based on his qualifications because Floyd received higher scores in the selection process than Maples. They also appear to argue (Defendants' Motion for Summary Judgment at 2) that Plaintiff's greater number years of experience is not enough to show pretext as there were many factors involved in the decision.

10

Maples cannot rely on his qualifications to establish pretext because he has not presented evidence that would allow a reasonable jury to conclude that he was better qualified than Floyd.[6] Both Maples and Floyd were at least minimally qualified to serve as Fire Marshal. Anderson testified that he found that Floyd had supervisory skills and sufficient experience to perform the duties of Fire Marshal. See Anderson Dep. 16-20, 22-23. Anderson also testified that none of the candidates had the necessary management experience and although Maples had more supervisory experience, it was only for a short period of time. Anderson Dep. 17.

Maples appears to argue that he had more supervisory experience than Floyd and thus he should have been chosen for the job. He has presented nothing, however, to show that supervisory experience was the only or most important qualification of the job or that Floyd did not at least minimally meet this requirement. Maples' self-assessment of his superior qualifications fails to rebut Defendants' legitimate explanation that Floyd was chosen based on the results of the written exercise and interviews. See, e.g., Anderson, 406 F.3d at 269 (holding that a Title VII plaintiff "cannot establish her own criteria for judging her qualifications for the promotion" but "must compete for the promotion based on the qualifications established by her employer"). Maples has presented no information to dispute that he was rated higher than Floyd by the panels who evaluated his written exercise and interview or that his combined score was higher than Floyd's score.

---

[6]The Fourth Circuit has stated that, when comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are demonstrably superior, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." Heiko, 434 F.3d at 261- 62. But where "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Id. at 261 (citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 649 & n. 4 (4th Cir. 2002) (emphasis added); Evans, 80 F.3d at 960).

Maples argues that Floyd's lack of management experience is shown by Anderson's comment to Irmo Fire Marshal Jeff Allen ("Allen") that he hoped Floyd would mature and grow into the job. Anderson, however, testified that the comment was in the context of maintaining good relations with a neighboring fire department. Anderson stated that Allen (who had been a candidate, but had withdrawn his application) as well as Floyd would also have needed to grow into the position. Tr. 45-56.

Maples fails to show that he was better qualified than Floyd based on her being sent to training. Anderson denies that Floyd was scheduled for advanced supervisory training because she was not qualified for the position of Fire Marshal. He states that in the past two years (prior to August 2008) he has scheduled this training for seven members of his staff (in addition to Floyd) including six white males and one was a black male. Anderson further states that three white males and one black male are scheduled to take the class in 2008. Anderson Supplemental Aff., Para. 3.

(b)     <u>Discriminatory Selection Process</u>

Maples claims that the selection process was designed and manipulated by Anderson in a manner to favor Floyd and disfavor Maples because the written questions were developed by Anderson; the written questions were evaluated by Anderson, Anderson's loyal deputy Jenkins, and Anderson's friend Faggart; Anderson preselected Floyd and made it known to Jenkins and Austin (who knew the race and gender of the applicants); and the rating panel for the oral boards included Jenkins. Defendants contend that Maples fails to show that the selection process was discriminatory.

Maples fails to show pretext based on the selection process. Massey, Jenkins, Dooley, Gentry, Gilliam, and Hopkins all deny that race or gender played a role in their assessment of the

candidates and state that Anderson did not attempt to influence their assessment of the applicants. See Massey, Jenkins, Dooley, Gentry, Gilliam, and Hopkins Affs. Jenkins states that he did not consult with Anderson or Faggart in scoring the written questions. Jenkins Aff., Para. 3. Anderson denies that Maples would have been appointed to the position of Fire Marshal but for his gender and/or race. Anderson Aff., Para. 5. Austin states that neither Floyd's race nor gender were motivating factors in his decision. Austin Aff., Para. 2. Faggart states that the written questions were delivered to him in North Carolina and he did not know the race or gender of the applicants. He also denies race or gender played any role in his review or scoring of the materials. Faggart Aff., Paras. 3 and 9. Further, Maples testified that he had no objection to the written component of the process or the questions, no reason to believe that any question was unfair or biased, and no reason to believe that any member of the panel was biased against him. Maples Dep. 37-38.

Review of the scores on the written questions does not support a theory that Anderson attempted to gain favor for Floyd, as she was rated fifth and sixth on the questions of the nine final applicants. Even if Jenkins' oral interview scores were not considered in the process, Floyd would have scored well above Maples on the oral interview portion of the process.[7] See Anderson Aff., Ex. A; Jenkins Aff., Appendices B and C.

        (c)      <u>Consideration of Race and Gender in Employment Decision</u>

Maples also claims that he has shown pretext because he has presented evidence that Anderson consciously considers race and gender when making employment decisions.

---

[7]Floyd received 712 points on the interview portion of the process and Maples received 632. Jenkins' scores were 95 for Maples and 102 for Floyd, a difference of only 7 points. The largest part of the 80 point differential is by Dooley (white male) who scored Maples at 109 and Floyd at 140. See Attachments to Anderson, Jenkins, and Dooley Affs.

Defendants contend that Plaintiff fails to show pretext because he has misconstrued Anderson's testimony; Anderson's testimony, affidavit, and memorandum show that his selection of Maples was not based on race or gender; and statements of a general nature are not evidence of a discriminatory motive.

Maples claims that Anderson is predisposed to reverse discrimination based on his selection of Jenkins as the Deputy Fire Chief. He appears to claim that Joseph Aaron Smith ("Smith"), a white male, should have been selected instead of Jenkins. Smith began working for the City Fire Department in 1973 and retired in 2006 as an Assistant Fire Chief. The Assistant Fire Chief position is the second highest position with the Department, just below the Fire Chief. Smith claims that Jenkins was not as qualified for the job as he was only a Battalion Chief (which is below the position of Assistant Chief) at the time of his selection. See Smith Dep. 1-8. After the selection of Jenkins, Smith met with Anderson. Smith testified that he told Anderson that there was "no way" that Jenkins was more qualified for the job than he (Smith) was to which Anderson allegedly said "You're right, but [Jenkins] brings a unity to the Department." Smith Dep. 9-11. Maples claims that unity is a code word for diversity and is strong evidence that Anderson uses gender and race to make employment decisions.

Maples fails to show pretext based on the selection of Jenkins as Assistant Fire Chief. Bradley denies that his promotion decisions in other matters have been affected by considerations of race and gender. He has provided a list of promotions and reclassifications of Chief Officer ranks during his tenure as Fire Chief. Of the thirty promotions, twenty-four were white males, four were black males, one was a Hispanic male, and one was a female of undesignated race. Anderson Supplemental Aff., Para. 2 and attachment.

14

Maples also claims that he has shown pretext because Anderson announced to his senior staff in 2003 that the Fire Department needed more diversity in its upper management. Maples Aff., Para. 2. Additionally, he notes that Anderson testified that it was good to consider gender and race when making a decision. Anderson Dep. 35. Review of Anderson's testimony reveals, however, that Anderson stated that he believed in diversity, "but certainly not at the expense of good qualifications." Id. Anderson states he believes that a diverse work force enhances the operations of the Fire Department, but he also states that he strongly objects to the use of gender, race, or other factors as substitutes for judging employees on their merits. Anderson Aff., Para. 6.

Although Anderson made comments about diversity, Maples has not shown that Anderson recommended Floyd for the Fire Marshal position because of her race and/or gender. Here, comments about diversity or unity are too general or ambiguous to show discrimination in the decision to select Floyd. See Spain v. Mecklenburg County Sch. Bd., 2002 WL 31856617, *4 (4th Cir. 2002)(purported comments by the Superintendent of the Mecklenburg County School Board that she preferred female administrators because they are better organized than men was insufficient to establish pretext in the face of evidence that during the superintendent's administration fourteen of the twenty-four new administrators were men); Plumb v. Potter, 212 Fed. Appx. 472 (6th Cir. 2007)(comment by employee's supervisor, who was responsible for filling position, that the facility needed more diversity was not evidence of pretext); Alitizer v. City of Roanoke, 2003 WL 1456514 (W.D.Va.)(unpublished)(three white police officers alleged that the City of Roanoke promoted a less qualified African-American female to police sergeant ahead of them because of her race. The district court noted that "[Police Chief] Gaskins' concern about the lack of diversity in the Department's ranks is not evidence of discriminatory animus. Nor is the fact that Gaskins thought it important to

15

recruit and prepare minorities for promotion. That evidence says nothing about Gaskins willingness to promote a candidate *because* that candidate is an African-American."), aff'd, 78 Fed.Appx. 301 (4th Cir. 2003).

  B. <u>Claims against Anderson in his Individual Capacity</u>

Maples alleges that Anderson, acting under color of state law, violated his constitutional rights and rights under Title VII. He seeks an award of punitive damages. Complaint, Paras. 9 and 18. Anderson contends that he is entitled to summary judgment because Maples cannot establish liability under Title VII and that it follows that Anderson is immune from liability under § 1983 and he is entitled to qualified immunity. Additionally, Anderson argues that Maples fails to show that, in making his recommendation for Fire Marshal, he exercised his discretion in an arbitrary, capricious manner.

Where a § 1983 claim is based upon alleged discrimination, the standards developed in Title VII litigation apply. <u>Beardsley v. Webb</u>, 30 F.3d 524, 529 (4th Cir. 1994); <u>see</u> also <u>Causey v. Balog</u>, 162 F.3d 795, 804 (4th Cir. 1998)(The elements a plaintiff must prove and the standards applied in assessing a § 1983 gender discrimination claim are the same as in the Title VII context. If a plaintiff fails to establish that defendants violated her rights under Title VII, then her similar claims under § 1983 must also fail). Thus, Defendant Anderson is entitled to summary judgment on the claim asserted against him under § 1983 for the same reason that the City is entitled to summary judgment for the claims asserted against it under Title VII.

Punitive damages are available under § 1983 where a defendant is motivated by an evil intent or shows a reckless or callous indifference to a plaintiff's rights. <u>Smith v. Wade</u>, 461 U.S. 30 (1983). To sustain a claim for punitive damages under the civil rights statute, a plaintiff can show either

16

malice or "reckless indifference" to his federally protected rights. See Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 443-45 (4th Cir.2000). Here, Maples has simply not presented any evidence to show callous or reckless indifference or to show malice.

## CONCLUSION

Based the foregoing, it is recommended that Defendants' motion for summary judgment (Doc. 20) be granted.

                              Respectfully submitted,

                              Joseph R. McCrorey

January 29, 2009              United States Magistrate Judge
Columbia, South Carolina